80 213
153a 83

JAMES N. SICKLES, as Administrator, etc., of WINFIELD F. SICKLES, Deceased, Respondent, *v.* THE NEW JERSEY ICE COMPANY, Appellant.

*Negligence — proof of absence of contributory negligence — skating on a navigable river — risks assumed — Penal Code, § 429 — duty thereunder of a person cutting ice.*

In an action brought to recover damages sustained by the death of the plaintiff's intestate, caused by the alleged negligence of the defendant, the burden rests upon the plaintiff to show that the negligence of the deceased did not contribute to the injury, but it is not necessary for him to do so by direct evidence, as the absence of contributory negligence may be inferred from the circumstances or the nature of an accident.

A person has the right to skate upon a navigable river, which is a public highway, and when so doing is not negligent in assuming that he runs no risk, except the ordinary risk incident to such a highway. He is not, as a matter of law, negligent in assuming that his life will not be imperiled by the gross negligence of parties engaged in cutting ice in omitting to guard their ice cuttings by putting a sufficient fence or guard around the same, as required by the provisions of section 429 of the Penal Code, until the ice had become safe. The absence of such a fence or guard about a cutting is an assurance that the ice is at least six inches in thickness.

APPEAL by the defendant, The New Jersey Ice Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Columbia on the 22d day

of January, 1894, upon the verdict of a jury, rendered after a trial at the Columbia Circuit, with notice of an intention to bring up for review on such appeal said judgment and the order entered in said clerk's office on the 22d day of January, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Frank H. Osborn*, for the appellant.

*Cadman & Peck*, for the respondent.

PUTNAM, J. :

The only question which requires consideration is whether on the trial there was evidence produced tending to show the absence of contributory negligence on the part of deceased, which the trial judge was justified in submitting to the jury.

While it was for the plaintiff to show that the negligence of deceased did not contribute to the injury, it was not necessary for him to do so by direct evidence. Absence of such negligence might be inferred from the circumstances or the nature of the accident. Judge DENIO, in *Johnson* v. *The Hudson R. R. Co.* (20 N. Y. 65–73), uses the following language : " The jury must eventually be satisfied that the plaintiff did not by any negligence of his own contribute to the injury. The evidence to establish this may consist in that offered to show the nature or cause of the accident, or in any other competent proof. * * * It is not absolutely essential that the plaintiff should give any affirmative proof touching his own conduct on the occasion of the accident. The character of the defendant's delinquency may be such as to prove, *prima facie*, the whole issue ; or the case may be such as to make it necessary for the plaintiff to show by independent evidence that he did not bring the misfortune upon himself."

In *Hart* v. *The Hudson River Bridge Co.* (80 N. Y. 622) the same doctrine is stated, and it is held that " where from the circumstances shown inferences are to be drawn which are not certain and uncontrovertible, and as to which persons might differ, it is for the jury to decide." (See, also, *Boyce* v. *Manhattan Ry. Co.*, 118 N. Y. 314.)

Under the doctrine established by the above-cited cases was the evidence produced on the trial proper to be submitted to the jury,

and from which absence of contributory negligence could be found, or should the trial judge have granted defendant's motion for a nonsuit? With considerable hesitation I have reached the conclusion that the case was rightfully disposed of by the learned trial judge.

Deceased, when he met his death, was skating on a navigable river. He was rightfully there. (*French* v. *Camp*, 18 Maine, 433; *Woodman* v. *Pitman*, 79 id. 456; 10 Am. & Eng. Ency. of Law, 861.) He was upon a public highway.

It is said in the opinion delivered by Judge GRAY in *Turner* v. *The City of Newburgh* (109 N. Y. 301–307), in reference to one traveling along an ordinary highway: "A person using a public highway is not bound to anticipate danger without some notice of a condition of things suggesting a peril of travel. It was for the jury to decide, as matter of fact, whether, under the proofs, the plaintiff conducted herself as a person ordinarily does under similar circumstances." In *Jennings* v. *Van Schaick* (108 N. Y. 530, 531) Judge FINCH stated in regard to one passing along a highway: "She had a right to assume the safety of the sidewalk, and so was not called upon to give attention to her steps until in some manner warned of danger." In *Pettengill* v. *The City of Yonkers* (116 N. Y. 558–564) the doctrine laid down in the above-cited cases was followed, and it was held that "a person using a public street has no reason to apprehend danger, and is not required to be vigilant to discover dangerous obstructions, but he may walk or drive in the day-time or night-time, relying upon the assumption that the corporation, whose duty it is to keep the streets in a safe condition for travel, have performed that duty, and that he is exposed to no danger from its neglect."

I think to a certain extent the same doctrine should apply to one traveling on the ice on a river highway; that is, that one so traveling is not negligent in assuming that he runs no risks except the ordinary risk incident to such a highway. He is not, as matter of law, negligent in assuming that his life will not be imperiled by the gross negligence of parties in omitting to guard their ice cuttings as directed by the statute.

Deceased, at the time of the accident, was lawfully skating on the river. The ice, ordinarily, was of great thickness and perfectly

safe for skating.  Defendant had cut and removed the ice from three large cuttings, and there was no sufficient fence or guard around such cuttings, as required by section 429 of the Penal Code, which is as follows :

" A person or corporation cutting ice in or upon any waters within the boundaries of this State for the purpose of removing the ice for sale, must surround the cuttings and openings made, with fences of bushes or other guards, sufficient to warn all persons of such cuttings and openings.  Which fences or guards must be erected at or before the time of commencing the cuttings or openings, and must be maintained until ice has again formed therein to the thickness of at least six inches.  Whoever omits to comply with this section is guilty of a misdemeanor."

The evidence was such that the jury could properly have found that in two of the cuttings the ice was thick enough to bear up a person skating, while upon the third opening it was only three-fourths of an inch thick.  On this cutting deceased skated, the ice gave way and he was drowned.  There was evidence that the ice in all of the three 'cuttings was of the same color and appearance.'

The statute above quoted required defendant to make and keep a sufficient fence or guard around its openings or cuttings until the ice was formed thereon at least six inches thick.  Although Sickles probably knew that he was skating on a cutting made by defendant it does not appear that he knew that the ice there was only three-fourths of an inch thick ; and I do not think he was, as a matter of law, negligent in assuming that the defendant would comply with the statute and keep a fence or guard around the cuttings until the ice had become safe.  It was not negligence for him to assume that defendant would not be grossly negligent.  The absence of a fence was an assurance to him that the ice was six inches in thickness.  It was as if an agent of defendant had been stationed at the place in question and so informed him.

The object of the statute is to prevent the occurrence of such casualties as happened in this case by compelling those taking ice from the river to surround their cuttings with proper guards, so that one on the river, as above suggested, shall run no risk, except the ordinary perils of being on such a highway.  Hence, persons skating on the river have the right, without being necessarily negligent, to rely

upon the observance of the statute by those taking ice therefrom, and to believe that where there are no fences or guards there are either no ice cuttings, or, if otherwise, that the ice has become six inches thick and safe.

It is probably true, as appellant claims, that deceased knew that he was skating on an ice cutting, but it is not shown that he knew that the ice thereon was unsafe. The absence of the guards and the statute told him that the ice was six inches thick, and was perfectly safe for him to go upon. As one walking along the streets of a city may, without negligence, rely on the assumption that the municipal corporation will perform its duty in keeping the streets safe, so deceased skating on the river could assume that the defendant had performed its duty by complying with the provisions above quoted of the Penal Code.

I think, therefore, that it was, under the circumstances, a question for the jury whether there was any negligence on the part of the deceased. The color of the ice was the same in all the cuttings, and, hence, the color of the part where he lost his life was not notice to him of the danger. If he knew he was where defendant had removed the ice he might, as we have seen, without being negligent, conclude that the ice, four days after defendant had ceased cutting, had formed six inches thick. The facts were all before the jury. It was a case where the inferences to be drawn therefrom were not certain and uncontrovertible, and, hence, they were for the jury to decide.

There was some evidence in the case that deceased was warned by young Van Valkenburg not to go on the ice at the place where he was drowned, but it was not clearly shown that Sickles heard the warning. He was shown to be hard of hearing, and, hence, it was a question for the jury to decide whether he did hear it.

I think the evidence, offered and excluded by the learned trial judge, that the fence or guard around the cutting was the same as had been used and maintained by others engaged in the same business, and that no accident had happened before, was properly excluded. The question was whether the fence erected by defendant at the time of the accident was sufficient under the statute. The fact that defendant or others had used a similar guard before would

not tend to show the sufficiency of the fence.      The trial judge could have properly instructed the jury that the guard in question put around the cuttings of defendant was insufficient, under the statute. The learned counsel for appellant calls our attention, among other authorities, to the case of *Weston* v. *The City of Troy* (139 N. Y. 281). That case is not a parallel one.      There the action was for damages by reason of a fall on a sidewalk, occasioned by a slippery ridge. The plaintiff was a witness on the trial. The accident occurred in the day-time and the ridge, as the case states, was plainly visible. The court held that, " The presumption which a wayfarer may indulge, that the streets of a city are safe, and which excuses him from maintaining a vigilant outlook for dangers and defects, has no application where the danger is known and obvious." The distinction between that case and this is clear.      In that decision it was not intended to overrule the doctrine stated in *Jennings* v. *Van Schaick* (*supra*), and kindred cases above cited.      In *Weston* v. *The City of Troy* the obstruction in the street was obvious, and the plaintiff, as a witness or otherwise, was bound to show how she slipped and fell on a ridge plain to be seen in the day-time.

In *Jennings* v. *Van Schaick* (*supra*), and many other cases where the defect in the street was not obvious, it is held that one passing along a highway has the right to assume the safety of the street, and so is not called upon to give attention to his steps until in some manner warned of his danger.      So, in the case under consideration, where the thinness of the ice in the cutting was not apparent, deceased, without negligence, could assume, in skating on the river highway, that he incurred no risk, except the ordinary ones incident to such a highway, and that the ice in the cuttings around which there was no guards, as required by the statute, was of such a thickness as to render skating thereon safe.

I conclude, therefore, that the judgment should be affirmed, with costs.

MAYHAM, P. J., concurred; HERRICK, J., concurred in the result.

Judgment affirmed, with costs.